IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R.Q.C. LTD. d/b/a REMBRANDT CHARMS | ) ) | |
| | ) | Civil Action No. 1:13-cv-307 Erie |
| Plaintiff, | ) ) | Judge Mark R. Hornak |
| v. | ) ) | |
| JKM ENTERPRISES, INC. d/b/a CHARMS PLUS and PAUL T. MACHIELS, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

Pending before the Court is a Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) filed by Defendants JKM Enterprises d/b/a Charms Plus ("Charms Plus") and Paul T. Machiels ("Machiels") (collectively, "Defendants"). ECF No. 17. For the reasons which follow, Defendants' Motion is denied.

## I.    BACKGROUND

Plaintiff R.Q.C. Ltd. ("RQC") is a New York corporation that designs and manufactures charms and charm bracelets for sale to retailers. Compl. ¶ 2. Charms Plus is a North Carolina wholesale company that also sells charms and charm bracelets to retail companies. *Id.* ¶ 5. Machiels, a citizen of North Carolina, is the owner and Vice President of Charms Plus. *Id.* ¶ 7; Machiels Aff. ¶ 1.

RQC contends that Defendants have copied, reproduced, and sold charms that are substantially similar in design and presentation to those marketed and sold by RQC. Compl. ¶¶ 18-22. RQC also maintains that Defendants are using the same unique names used by RQC to describe the charms. *Id.* RQC has registered the vast majority of the charms at issue with the

United States Copyright Office; many others are the subject of pending copyright registration applications. *Id.* ¶¶ 15-17. Consequently, RQC asserts that Defendants have unlawfully reproduced their copyrighted charm designs in violation of the United States Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, and state unfair competition law.

Apropos to the instant motion, it is undisputed that Charms Plus is not incorporated in Pennsylvania and does not own or lease real estate, pay taxes, maintain any offices, or have any employees in Pennsylvania. Machiels Aff. ¶ 2. The same is true of Machiels individually. *Id.* ¶ 4. Consequently, RQC relies entirely upon Defendants' online activities as a basis for exercising personal jurisdiction over Charms Plus and Machiels in Pennsylvania. These activities include advertising on social media and operating an interactive website, www.jkmcharmsplus.com, through which Defendants market and sell the allegedly infringing charms. Subjeck Decl. ¶ 3; Subjeck Decl. Ex. A. The website includes links and forms that allow potential customers to view merchandise, contact the seller for more information, contact the seller to place an order through an "Order Form," and submit a credit application. *Id.* ¶¶ 4-5; Subjeck Decl. Ex. B-C. According to Machiels, Charms Plus realized approximately $55,000 in revenue from sales to Pennsylvania residents over the past five years, a figure representing 2.2% of its total sales revenue. Machiels Aff. ¶ 3.

## II.  **STANDARD FOR REVIEW**

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits a court to dismiss a complaint for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). Once a challenge to personal jurisdiction has been fairly raised, the plaintiff has the burden of establishing "jurisdictional facts through sworn affidavits or other competent evidence." *Patterson v. F.B.I.*, 893 F.2d 595, 604 (3rd Cir. 1990) (citation omitted). Specifically, the plaintiff carries the burden

of proving "either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)." *Mellon Bank (East) PSFS, N.A. v. Di Veronica Bros., Inc.*, 983 F.2d 551, 554 (3rd Cir. 1993) (citations omitted).[1]

In reviewing a motion to dismiss for lack of personal jurisdiction, the Court must accept as true all allegations in the complaint. *See D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3rd Cir. 2009); *Marten v. Godwin*, 499 F.3d 290, 295-96 (3rd Cir. 2007). However, "a plaintiff may not solely rely on bare pleadings to satisfy his jurisdictional burden. Rather, the plaintiff must offer evidence that establishes with reasonable particularity sufficient contact between the defendant and the forum state to support jurisdiction." *Square D Co. v. Scott Elec. Co.*, 2008 WL 4462298, *3 (W.D. Pa. Sept. 30, 2008) (quotations omitted). Disputes of fact created by affidavits and depositions "are generally resolved in favor of the non-moving party." *McMullen v. European Adoption Consultants, Inc.*, 129 F.Supp.2d 805, 810 (W.D. Pa. 2001) (quoting *Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F.Supp. 669, 673 n. 3 (E.D. Pa.1997)).

## III.  DISCUSSION

Federal courts "may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos*, 566 F.3d at 102 (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3rd Cir. 1987)). This determination entails a two-step inquiry. First, the court must determine whether the long-arm statute of the forum allows courts of that state to exercise jurisdiction over the defendant. FED. R. CIV. P. 4(e)(1). Second, if the forum state allows jurisdiction, the court must

---

[1] Where general jurisdiction exists, the forum state may exercise personal jurisdiction over the non-resident defendant even for non-forum-related activities. Specific jurisdiction, on the other hand, allows for the exercise of personal jurisdiction over a non-resident defendant only for actions arising out of or relating to the defendant's contact with the forum. *See Mellon Bank (East) PSFA, Nat'l Assn. v. Farino*, 960 F.2d 1217, 1221 (3rd Cir. 1992). Because there is no claim of general jurisdiction in this case, the Court need only consider whether it may exercise specific jurisdiction over the Defendants.

determine whether exercising personal jurisdiction over the defendant in a given case is consistent with the Due Process Clause of the United States Constitution. *See IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3rd Cir. 1998).

Pennsylvania's long-arm statute provides that jurisdiction may be exercised "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b) (1981). Thus, because Pennsylvania's long-arm statute is coextensive with the dictates of the United States Constitution, the traditional two-step analysis is collapsed into a single inquiry: "whether the exercise of personal jurisdiction would conform with the Due Process Clause." *Poole v. Sasson,* 122 F.Supp.2d 556, 558 (E.D. Pa. 2000); *see also Renner v. Lanard Toys Limited,* 33 F.3d 277, 279 (3d Cir. 1994) ("[T]his court's inquiry is solely whether the exercise of personal jurisdiction over the defendant would be constitutional."). Due process requires that the defendant have "minimum contacts" with the forum state. *Remick v. Manfredy,* 238 F.3d 248, 255 (3rd Cir. 2001) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Remick,* 238 F.3d at 255 (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109 (1987)).

In determining whether specific personal jurisdiction exists, courts are directed to undertake a three-part inquiry. *See D'Jamoos,* 566 F.3d at 102; *Marten,* 499 F.3d at 296. First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (internal quotation marks omitted); *see Walden v. Fiore,* 134 S.Ct. 1115, 1121-22, n.6 (2014). Second, "the litigation must 'arise out of or relate to' at

4

least one of those activities." *D'Jamoos*, 566 F.3d at 102 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Finally, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction would otherwise comport with principles of "fair play and substantial justice." *Burger King*, 471 U.S. at 476.

As courts have frequently lamented, personal jurisdiction issues are "more complicated when a defendant's contact with the forum state is primarily done through internet contacts." *Planet Goalie, Inc. v. Monkeysports, Inc.*, 2011 WL 3876178, *3 (M.D. Pa. Sept. 1, 2011). The seminal opinion in this regard is *Zippo Mfg. Co. v. Zippo DOT Com*, 952 F.Supp. 1119 (W.D. Pa. 1997). In *Zippo*, this court established a "sliding scale" analytical framework for internet-based personal jurisdiction cases based upon the "level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* at 1124. The court explained:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* at 1124. The Third Circuit endorsed this general framework in *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3rd Cir. 2003), but clarified that the plaintiff must also provide evidence of "the intentional nature of the defendant's conduct vis-à-vis the forum state." *Id.* at 452. In

other words, "there must be some evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts." *Id.* at 454.[2]

In the wake of *Zippo* and *Toys "R" Us*, most courts have concluded that a defendant that intentionally conducts business transactions over an interactive website with customers in the forum state has purposefully directed itself of the laws of that forum. In *Square D*, for example, the defendant's website contained links providing "a [telephone] number and e-mail address for the purpose of placing an order," information concerning product warranties, and a link that permitted a potential purchaser to "submit a form specifying the manufacturer, catalog number, and quantity of the product to be purchased, as well as the purchaser's company name, phone, fax and e-mail." *Square D.*, 2008 WL 4462298 at *3. There was also a space on the form for additional "comments" concerning a proposed transaction. *Id.* Although a customer could not directly order products using only the website, customers could "commence the ordering process" by "provid[ing] much of the same type of information that would be required for an order (e.g., manufacturer, quantity, catalog number, contact information)." *Id.* at *8. Indeed, the court noted that the website had produced "twenty-four (24) Pennsylvania customers and a total of $10,238.25 in sales" for the defendant. *Id.* at *9. Although this amount represented "less than 1%" of the defendant's total sales, the Court concluded that it was sufficient to establish personal jurisdiction in the state of Pennsylvania. *Id.* As explained by the court:

> The website was more than a mere advertisement; rather, it was an interactive site that allowed customers to take the first step in an ordering process that could be completed with one phone call or e-mail. By knowingly selling and shipping a product that is at issue in this litigation

---

[2] These principles appear to be entirely consistent with the Supreme Court's decision and reasoning in *Walden*, 134 S.Ct. at 1125, n.9.

> to a customer [in] Pennsylvania, the Moving Defendants purposefully availed themselves of the laws and privileges of this forum.

*Id.* at *11.

*Willyoung v. Colorado Custom Hardware, Inc.* is similarly instructive. *Willyoung*, 2009 WL 3183061 (W.D. Pa. Sept. 30, 2009). In *Willyoung*, the website at issue allowed visitors to "request a catalog by supplying certain information according to the website prompts, contact the company directly by e-mail, subscribe to [defendant's] on-line newsletter, and search, view, and select products for on-line purchase via a 'shopping cart.'" *Id.* at *12. Over a two-year period, Pennsylvania customers had utilized the website to place 211 orders amounting to $41,566.05 in sales. *Id.* Based on the foregoing, the court concluded that the defendant had purposefully availed itself of the privilege of conducting business in the state of Pennsylvania by "intentionally and repeatedly engag[ing] in internet-based sales of its products to Pennsylvania residents via its website." *Id.* at *13. Other courts have frequently reached the same conclusion. *See also Gentex Corp. v. Abbott*, 978 F.Supp.2d 391, 398 (M.D. Pa. 2013) (finding personal jurisdiction where non-resident defendant's interactive website was used by Pennsylvania residents to place at least 17 orders over a three-year period); *TRE Services, Inc. v. U.S. Bellows, Inc.*, 2012 WL 2872830, *4-5 (W.D. Pa. July 12, 2012) (finding personal jurisdiction based on defendant's commercially interactive website that accepted orders from Pennsylvania); *Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, 2008 WL 4755350, *3 (D. N.J. Oct. 29, 2008) ("Personal jurisdiction is properly exercised over a defendant using the Internet to conduct business in the forum state."); *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 588, 593-94 (D. Del. 2008) (defendants purposely availed themselves of doing business in state of Delaware where they operated a website accessible in Delaware, received orders and payments from customers in Delaware, and shipped their products to Delaware).

After considering the foregoing caselaw and the available evidence, the Court readily concludes that Charms Plus purposefully availed itself of the opportunity to conduct business with Pennsylvania citizens via its website. As demonstrated by the screen captures attached as exhibits by RQC, visitors to the Charms Plus website can view merchandise, contact the seller for more information, submit an application to purchase merchandise on credit, and initiate the ordering process by utilizing the "Order Form" on the website to specify the "items to be ordered." Subjeck Decl. ¶ 3; Subjeck Decl. Ex. B-C. In this regard, the website is clearly interactive. *See, e.g., Square D.*, 2008 WL 4462298 at *8-11; *Willyoung*, 2009 WL 3183061 at *13.

Moreover, there is ample evidence of the type of "intentional interaction with the forum state" required by the Third Circuit for the exercise of personal jurisdiction. *See Toys "R" Us*, 318 F.3d at 451-52 (requiring evidence that the defendant has "intentionally interact[ed] with the forum state). Machiels' affidavit indicates that Charms Plus totaled $55,000 in sales to Pennsylvania residents over the past five years. Machials Aff. ¶ 3. At any probable price point, this figure represents thousands of sales of charms to Pennsylvania residents. *See* Arcadipane Decl. ¶ 12. Moreover, a representative of RQC has submitted a declaration indicating that she recently encountered an entire display of Charms Plus' allegedly infringing charms in the merchandise of a Pennsylvania retail jewelry store. *Id.* ¶¶ 4-10. Based on this evidence, it is apparent that Charms Plus "repeatedly and consciously chose to process Pennsylvania residents' applications" for orders of its products. *See Toys "R" Us*, 318 F.3d at 452 (quoting *Zippo*, 952 F. Supp. at 1126).

Defendants contend that jurisdiction is unfounded because only 2.2% of Charms Plus' total sales revenue stemmed from sales to Pennsylvania residents. According to Defendants, the

exiguity of this percentage belies any suggestion that it specifically targeted Pennsylvania residents with its internet activities. Courts have repeatedly rejected similar arguments. *See, e.g., Square D.*, 2008 WL 4462298 at *9 n. 10 (concluding that an amount equal to less than 1% of overall sales was sufficient to establish minimum contacts); *Zippo*, 952 F.Supp. at 1127 (exercising personal jurisdiction despite that only 2% of the defendant's customers were Pennsylvania residents); *L'Athene*, 570 F. Supp. 2d at 593-94 (exercising personal jurisdiction despite that sales to the forum state constituted less than 1% of defendants' total annual sales based on units sold). As noted in *Zippo*, "[t]he Supreme Court has made clear that even a single contact can be sufficient." *Zippo*, 952 F.Supp. at 1127 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)); *see also Square D.*, 2008 WL 4462298 at *9 n. 10 (noting that, while an argument based on a minute number of overall sales might be "valid in the context of general jurisdiction, in the context of specific jurisdiction it is evidence that supports Plaintiff's argument that the Moving Defendants purposefully availed themselves of the laws and privileges of Pennsylvania by selling and shipping products to residents of the Commonwealth.").

Having determined that Defendants purposefully availed themselves of the privilege of conducting business with Pennsylvania residents through their website, the Court must next consider whether this litigation "arise[s] out of and relate[s] to" those sales. *D'Jamoos*, 566 F.3d at 102. This requirement is readily satisfied because the allegedly infringing charms identified by RQC are the precise same charms marketed and sold by Charms Plus to Pennsylvania residents through its website. *See, e.g., Willyoung*, 2009 WL 3183061 at *13 ("The second part of our jurisdictional inquiry is also easily satisfied because this litigation arises out of and relates to BGM's use of its web site to conduct internet-based sales of its merchandise to Pennsylvania residents.") (internal quotation marks omitted); *Square D.*, 2008 WL 4462298 at *11 (finding the

relatedness requirement satisfied where "at least one" of the products sold to a Pennsylvania resident by the defendant was from the allegedly infringing line of products at issue in the litigation).

Finally, the Court must consider whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe*, 326 U.S. at 316). Because the existence of minimum contacts makes jurisdiction presumptively constitutional, the defendant at step three of the specific-jurisdiction-inquiry process "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Burger King*, 471 U.S. at 477). The burden upon the defendant at this stage of the inquiry is considerable. *See Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3rd Cir. 1998) (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3rd Cir. 1993) ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."). As the Third Circuit has observed:

> The Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness. Among them are the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies, and [t]he procedural and substantive interests of other nations.

*O'Connor*, 496 F.3d at 324 (internal quotations omitted).

Notably, Defendants have intentionally declined to address this element in their motion to dismiss and responsive brief. As such, they have failed to meet the "heavy" burden imposed upon them at this stage. *Grand Entm't Group*, 988 F.2d at 483. In any event, the Court is satisfied that several factors weigh in favor of the exercise of personal jurisdiction in the instant

case. Foremost among these are Plaintiff's interest in obtaining convenient and effective relief in the forum of its choice and Pennsylvania's interest in protecting its citizens from the sale of infringing goods within its borders. *See Square D.*, 2008 WL 4462298 at *12 (concluding that jurisdiction should be exercised in Pennsylvania "because the counterfeit goods in question potentially pose a danger to the public and were sold to residents of this Commonwealth."); *Zippo*, 952 F.Supp. at 1127 (noting Pennsylvania's strong interest in resolving trademark infringement claims implicating its citizens and giving "due regard to the Plaintiff's choice to seek relief in Pennsylvania"). As the court noted in *Zippo*, "[i]f [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple – it could have chosen not to sell its [products] to Pennsylvania residents." *Id.* at 1126-27.

Finally, RQC asserts that the Court may appropriately exercise personal jurisdiction over Machiels individually because, as the owner of Charms Plus, Machiels directed and authorized the sale of infringing charms to Pennsylvania residents. In support of this proposition, RQC directs the Court to Machiels' LinkedIn page and several advertisements identifying Machiels as the owner (and public face) of Charms Plus. *See* Subjeck Decl. ¶¶ 7-8; Subjeck Decl. Ex. A, E, F. Notably, although Machiels contends that RQC's evidence is unsupported and speculative, Machiels does not refute those allegations in his affidavit or supply any evidence to rebut the suggestion that he directed and controlled Charms Plus' allegedly infringing activities. *See* Machiels Aff. ¶¶ 1-4. Consequently, the Court concludes that it may properly exercise specific personal jurisdiction over Machiels at this stage in the proceedings.

## IV. **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is denied. An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated: September 23, 2014

cc:    All counsel of record